The opinion of the Court was delivered by
Dargah, Ch.
Of questionable policy is the rule of law, which sanctions, and recognizes as valid, a confession of judgment, which is intended to stand as security for future advances. Its tendency is to abuse. Besides, it mars the symmetry of the law, and is inconsistent in this ; it is a judgment upon a debt, which at the time does not exist. The validity of such a judgment is now too well settled to be shaken, or questioned. It only remains for the Court, to regard such a proceeding with that scrutinizing jealousy, demanded by the nature of the transaction. Where there is a confession of judgment, which is intended to stand as security for future advances, and subsequently, there is another judgment upon a bona fide and subsisting debt, the first judgment, (in this Court at least,) would only be permitted to take priority over the second, from the time the advances were made. The equity of the postponement of the first to the second judgment, in the case supposed, and to the extent stated, is too obvious to require discussion. And here I will *402 make a remark, which has a direct pertinency to the present case. "Where as in this instance, a confession is given to secure the plaintiff in the payment of existing debts of the defendant, the case does not fall within the suspicious category of those, where the advances are to be consumed by the borrower, or embarked by him in the hazards of trade. I see no difference between such a confession, and a confession to each creditor separately and directly upon his subsisting debt.
To turn now, to the facts of the case, I am gratified to be able to say, that the arrangement made between the two reverend gentlemen, who are defendants, is not only permitted by the law, but was fairly, and honorably conducted, and carried out. In all cases of bankruptcy, there must of necessity be one or more victims. In this instance, the plaintiff occupies that unhappy position. His debt is confessedly just, and he says he will suffer greatly from loss of the money. This is certainly a misfortune, much to be regretted. But the claims of the other creditors are equally just, and the Court perceives no equitable ground, to deprive them of their more favorable position, to make room for the plaintiff'. Indeed this is not claimed. But it is asked, that the Court should compel Arthur to pay the plaintiff’s debt, which, as the said Arthur has not secured the payment of his own debt from McCollough, would be particularly hard upon him, unless he has committed some fraud- upon the plaintiff, or violated some obligation to him. But the most scrutinizing search can discover no semblance of fraud, and there is a total absence of all jiroof to show, that Arthur had made any assumptions to pay the plaintiff’s debt.
It seems, that Arthur at first contemplated an arrangement to pay, or assume, all the debts of his friend McCollough, but, on some estimate made by the latter, they were found to amount to about twenty-seven thousand dollars, including Arthur’s own debt, and that of the plaintiff. But Arthur *403 was unwilling to assume so large an amount. He however was willing, and agreed to assume the payment of McOol-lough’s debts to the amount of twenty-three thousand dollars, including his own claim, amounting at that time to two thousand, five hundred and thirty dollars and ninety-six cents. McCollough confessed a judgment to Arthur for twenty-three thousand dollars. This judgment was to stand as security for the payment of Arthur’s own claim as has been stated, and also for the sum of twenty thousand, five hundred and seventeen dollars, which Arthur was to apply in payment of McCullough’s other debts. It has not-been shown, it has not been pretended, that the fund, or property over which Arthur acquired a control by virtue of his judgment, was more than adequate for these purposes, so as to leave a balance for the satisfaction of the plaintiff’s judgment. On the contrary, it seems that the property has been exhausted without satisfying all of Arthur’s claim.
But it is said, and is assumed in the notice of appeal, and in the argument, that the plaintiff’s judgment was one of the debts which Arthur assumed to pay. This is not proved, but the evidence is directly the reverse. The agreement was, that Arthur was to pay twenty thousand, five hundred and seventeen dollars, on McOollough’s debts in the aggregate, without the specification of a single particular debt.
The first ground of appeal is, “ because the mortgage to the complainant was good from the time the defendant Arthur had notice of it.” The logic of this ground is not perceived. ' ¡
The second is “ because the defendant Arthur undertook to pay the debts of McCollough to the amount specified in the pleadings, that the complainant’s debt was enumerated among those to be paid, and the mortgage to Walker was a direction by McCollough to pay this debt first.”
*404 It is true that, Arthur undertook to pay the sum of twenty-three thousand dollars, on the debts of McCollough including that due to himself. But according to the evidence, it is not true, that the complainant’s debt was enumerated among those to be paid. Nor is it perceived, that the mortgage to Walker was tantamount to direction by McCol-lough to pay that debt first. It is not perceived, that McCollough had any authority to direct in the matter.
The third ground is, “ because Arthur was a trustee for the creditors, and undertook to pay all the debts enumerated at the time he took the confession, and mortgage; which confession and mortgage were taken to cover all the debts of McCollough, of which Walker’s was one.”
This ground is but a repetition of the preceding. How could a confession which was but for twenty-three thousand dollars, be intended to secure all the debts which amounted to twenty-seven thousand dollars. I have already said, that according to the evidence, there was no stipulation as to Walker’s debt, nor was there any specification of the debts to be paid.
The fourth ground is, “ because Arthur undertook to raise and pay the cash, and the plaintiff was not bound to take a note or land in lieu of cash.”
This ground presupposes that Arthur had undertaken or was in some way bound to pay the complainant’s claim, which has not been shown.
The fifth ground is, that “there was no impediment in the way of Arthur’s paying the plaintiff’s debt, and the mortgage was direction of McCollough,. who had the whole matter in his hands, to pay Walker in preference of all others from that date.”
It is true that Arthur might have paid Walker’s debt, if *405 be bad thought proper to do so. But not having stipulated to do so, he had the-discretion to pay, or not to pay it. It is not perceived, that McCollough had any power of direction in the matter; and if he had, I do not think the mortgage by him to Walter was an exercise of that power.
The sixth ground is, “ because the judgment and mortgage to Arthur, being to secure future advancements, was only good to Arthur for any sums advanced before the mortgage to Walker. As Arthur had paid but little for his judgment, but Walker’s was for a valuable consideration, and was intended to be covered both by Arthur’s and Walker’s liens.”
This ground asserts a principle founded on a just distinction, and would have been well taken, if the facts had been applicable. I have already intimated, that if the confession to Arthur by McCollough had been to secure future advances to be consumed or embarked by him in the hazards of trade, or more broadly, to secure a debt not then in existence, such judgment as a lien would, in my opinion, take precedence over subsequent incumbrances only from the time the advances were actually made. But the case here is different. The confession is for bona fide debts actually existing at the time the confession was made. It is no more than if McCol-lough had confessed to the creditors representing those debts individually. As to the facts assumed in the latter part of the proposition, it is clear from the proof, that the confession of judgment, and the mortgage from McCollough to Arthur were for full consideration. Arthur has paid the amount stipulated by him to be paid to McCollough’s creditors, and, in the way of security for his own claim, he is himself in part left without the pale.
The seventh ground is, “because it is evident from the case made, that Arthur intended to hinder Walker in the collection of his debt; for notwithstanding McCollough *406 gave tbe mortgage (to Walker) in March, 1855, (of which Arthur had notice,) he (McOollough) recognized it as a valid lien on the negroes in January the next year, and tried to borrow money on the faith of it, at that time, yet Arthur refused to pay it.”
If the fact as to notice, had been as stated in this ground of appeal, I do not see, how it could have placed Walker on a better footing. But it does not appear that Arthur was aware of this mortgage to Walker until June subsequent to its date. The attempt of McCollough to obtain from Walker further advances on the security of his mortgage of the two negroes, without the concurrence or connivance of Arthur, cannot affect the validity of the liens which the latter held, or even the morale of his position. As to McOollough, it is probable that he, as most failing debtors do, embraced the illusive hope, that his means were more ample than they proved to be, and that they would be sufficient to satisfy the claims of all his creditors. His overtures to Walker to ¡mo-cure further advances, do not necessarily involve any imputation upon his honesty. How can they affect the claims or character of Arthur, who does not appear to have been aware of those proceedings ? Some desire was manifested both by McCollough and Arthur to pay Walker’s claim. Arthur did not advance much, (if any) money in the payment of McCollough’s debts. They were satisfied for the most part from the proceeds of the sale of McCollough’s property. They, Arthur and McCollough, tendered to Walker satisfaction of his claim out of lands adjoining his own. This having been declined, they then tendered to him in satisfaction of his claim, McOollough’s note with Arthur as surety; which was also declined. This is what is alluded to, in the plaintiff’s fourth ground of appeal. If he had accepted either of these proposals his debt would have been secured. This does not look like hindering. These offers having been declined by Walker, were made, I suppose, to more accom *407 modating creditors. McCollough property has proved insufficient to satisfy all his debts. The sum secured by Arthur’s judgment and mortgage, has been exhausted without satisfying all of Arthur’s own claim. It is a hardship upon "Walker, as it is upon the other unsatisfied creditors of McCollough. The plaintiff’s case is a very common misfortune, which the most equitable administration of the laws cannot prevent or relieve.
It is ordered and decreed that the appeal be dismissed, and the circuit decree be affirmed.
Dunkin' and Waedlaw, CC., concurred.
JohnstoN, Ch., dissented.

Appeal dismissed.